

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00386-CR

_____

DAJUAN DELANO FRANKLIN, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 485th District Court
Tarrant County, Texas
Trial Court No. 1728854

---

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant Dajuan Delano Franklin challenges his felony conviction for burglary of a habitation; he was accused of breaking into an apartment where his girlfriend was hiding from him. *See* Tex. Penal Code Ann. § 30.02(c)(2). Specifically, Franklin complains about the admission of testimony concerning his alleged prior bad acts during the punishment phase of his trial. In two issues, Franklin challenges the admission of testimony related to his alleged prior family and domestic violence acts on (1) hearsay and (2) Rule 403 grounds. We affirm.

## Background

Both of Franklin's complaints on appeal relate to the trial court's admission of eyewitness Krissi Brantley's testimony of her prior knowledge of family or domestic violence between Franklin and his girlfriend Andrea Moore. We thus limit our recitation of the facts to those relevant to the issues on appeal.

Franklin pleaded guilty to one count of burglary of a habitation without any agreement as to punishment. During the bench trial on punishment, the State offered testimony from Brantley, who stated that on the day of the offense she offered Moore a place to stay because Moore said it "wasn't safe" for her to go home. Brantley knew Franklin and Moore through Franklin's sister. While Moore was at Brantley's apartment, Franklin sent multiple text messages to Moore threatening to kill her and telling her that he hated her. Brantley read the text messages and was concerned for Moore's safety.

2

Around 5:30 a.m., approximately an hour after he sent the text messages to Moore, Franklin began knocking on Brantley's front door. Brantley—concerned for Moore's safety—did not open the door. The knocks became more aggressive, prompting Brantley to call the police three times. It took officers "well over 30 minutes" to arrive. While waiting for the police to arrive, Brantley and Moore, afraid that Franklin would break in, hid in the storage closet on the balcony. Franklin eventually broke into Brantley's apartment, and Moore attempted to jump off the second-floor balcony to escape, but Franklin caught her. Brantley stayed in the storage closet throughout this interaction.[1]

During the punishment trial, the State asked Brantley if, prior to this offense, she was "aware of any family violence or domestic [violence] history between [Franklin] and [Moore]." Brantley answered affirmatively but provided no additional details. Franklin then raised two objections: (1) that the statement was hearsay and (2) that the evidence was minimally probative and substantially outweighed by unfair prejudice. The trial court overruled both objections. Afterward, the State repeated the question and followed up by asking Brantley if that knowledge was a factor in why she was scared that day—she again answered affirmatively. The State presented no other witnesses.

---

[1]When searching her apartment after the break-in, Brantley found a bag with "a really big knife" in it that was not in her apartment before the offense and did not belong to her.

The defense then presented two witnesses before both sides rested and closed. The trial court sentenced Franklin to 10 years' confinement in the Institutional Division of the Texas Department of Criminal Justice (TDCJ) with credit for time served.

## Discussion

Franklin's complaints on appeal relate to Brantley's testimony about her prior knowledge of his alleged past behavior and why she was fearful enough to hide in the storage closet during the offense. Franklin claims that this testimony amounted to "character assassination" and that the State had no need for the evidence, as he had already pleaded guilty. Franklin's first issue challenges the admission of the evidence on hearsay grounds and the second issue challenges the same admission under Rule 403. We address Franklin's Rule 403 challenge first.

## Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Wells v. State*, 611 S.W.3d 396, 427 (Tex. Crim. App. 2020); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *Redmond v. State*, 629 S.W.3d 534, 541 (Tex. App.—Fort Worth 2021, pet. ref'd). The admission of challenged evidence is not an abuse of discretion unless the trial court's determination lies outside the zone of reasonable disagreement. *Wells*, 611 S.W.3d at 427; *Redmond*, 629 S.W.3d at 541.

## I. Rule 403

Under Rule 403, a trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair

4

prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403. "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence is more probative than prejudicial." *James v. State*, 623 S.W.3d 533, 546–47 (Tex. App.—Fort Worth 2021, no pet.) (first citing *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g); and then citing *Emich v. State*, No. 02-18-00059-CR, 2019 WL 311153, at *7 (Tex. App.—Fort Worth Jan. 24, 2019, pet. ref'd) (mem. op., not designated for publication)). "Unfair prejudice" refers to the evidence's "tendency to suggest decision on an improper, usually emotional, basis." *Brown v. State*, No. 02-23-00321-CR, 2025 WL 1840470, at *17 (Tex. App.—Fort Worth July 3, 2025, no pet. h.) (mem. op., not designated for publication) (citing *Hart v. State*, 688 S.W.3d 883, 894 (Tex. Crim. App. 2024)). Rule 403 serves to protect a criminal defendant from *unfair* prejudice, not all prejudice. *See Ruiz v. State*, 631 S.W.3d 841, 865 (Tex. App.—Eastland 2021, pet. ref'd).

Following a Rule 403 objection, the trial court has a nondiscretionary obligation to weigh the probative value of the evidence against the unfair prejudice of its admission. *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd) (citing *Montgomery*, 810 S.W.2d at 389 ). When the trial court overrules a Rule 403 objection, we presume the trial court applied this Rule 403 balancing test and determined the evidence was admissible. *Id.*

The Rule 403 balancing test considers (1) the inherent probative force of the proffered item of evidence and (2) the proponent's need for that evidence against

(3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency that a jury that has not been equipped to evaluate the probative force of the evidence would give it undue weight, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

Franklin argues that the reference to "prior" family violence or domestic history between himself and Moore was "character assassination," was not relevant,[2] and, in light of his guilty plea, was not necessary. Franklin also claims that the use of the evidence suggests a decision on an improper basis and "confuse[d] the real issues." However, he points to nothing in the record to support such claims.

All six *Gigliobianco* factors weigh in favor of the admission of the evidence. As to the first and second factors, the State argues that the testimony was necessary to illustrate "why Brantley was so afraid of Franklin under the circumstances." We agree. Brantley testified that Franklin's aggressive knocking on her door caused her to be afraid enough to call the police three times and to hide in the storage closet on her balcony.

---

[2]Although Franklin contends on appeal that the evidence was not relevant, he did not make this argument to the trial court. *See Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial."). Additionally, Franklin did not brief the issue of relevance. As a result, we decline to address this complaint. *See* Tex. R. App. P. 38.1(i).

Brantley claimed that she was afraid during the offense because of the nature of the text messages from Franklin and her prior knowledge of his alleged domestic and family violence history. Brantley was the State's only testifying witness and her apartment is where the offense was committed. But even if the testimony was not strictly necessary, there is no evidence it unfairly prejudiced Franklin.

Franklin's statement that the decision[3] was made on an improper basis or that the challenged evidence confused the issues, is not enough to support factors three and four under *Gigliobianco*, and he does not provide any additional support for either claim.[4] In fact, the record supports the opposite. Two defense witnesses' testimony indicated that Franklin had been convicted of and arrested for other crimes, beginning as early as 2015 and continuing into 2024—two years after the commission of the offense in this case.

The trial court sentenced Franklin to 10 years' imprisonment—half of the applicable sentencing range—stating that he had been given "too many chances" and the offense here was "just too violent." *See* Tex. Penal Code Ann. §§ 12.33 (a second-degree felony is punishable by imprisonment for a term not more than 20 years or less than 2 years); 30.02(c)(2) (burglary of a habitation is a second-degree felony offense).

---

[3]We presume that Franklin is referring to the term of his confinement in TDCJ.

[4]Further, because the punishment phase was before the trial court and not a jury, the risk of unfair prejudice was reduced. *See Corley v. State*, 987 S.W.2d 615, 621 (Tex. App.—Austin 1999, no pet.).

Evidence of both the violence of the offense and Franklin's prior "chances" were properly before the trial court. Thus, there is nothing in the record to support Franklin's claim that the trial court's admission of Brantley's challenged testimony led to an improper punishment decision or confused the trial court.

Considering the fifth factor, Brantley's challenged testimony was not scientific or technical in nature, creating little risk that the trial court would confuse the issues or give her testimony unfair weight. *See Miranda v. State*, No. 02-23-00324-CR, 2025 WL 1782540, at *6 (Tex. App.—Fort Worth June 26, 2025, no pet. h.) (mem. op., not designated for publication) (citing *Gigliobianco*, 210 S.W.3d at 641 (providing scientific evidence as an example of the type of evidence that "might mislead a jury that is not properly equipped to judge" its "probative force")). And considering the sixth factor, the testimony did not take an inordinate amount of time—approximately one page out of a 71-page reporter's record was devoted to Brantley's affirmation (and the related objections and rulings) that her prior knowledge of Franklin caused her to be scared. *Id.*

Therefore, most of the six factors weigh in favor of admission, and nothing in the record indicates that Brantley's short testimony about her prior knowledge of Franklin's alleged family or domestic violence history resulted in unfair prejudice—or any prejudice—to him. We overrule Franklin's second issue.

## II. Hearsay

Under the Texas Rules of Evidence, hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Within the context of the rule, a "statement" is "a person's oral or written verbal expression, or nonverbal conduct that a person intended as a substitute for verbal expression." Tex. R. Evid. 801(a). A "matter asserted" is any matter that (1) is explicitly asserted and (2) is implied by a statement "if the probative value of the statement as offered flows from the declarant's belief about the matter." Tex. R. Evid. 801(c).

The erroneous admission of a hearsay statement is subject to a nonconstitutional harm analysis under Rule 44.2(b) of the Texas Rules of Appellate Procedure. *See Couchman v. State*, 3 S.W.3d 155, 160 (Tex. App.—Fort Worth 1999, pet. ref'd) (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998) (applying Rule 44.2(b) harm analysis to erroneous admission of hearsay evidence)); *see also* Tex. R. App. P. 44.2(b). A Rule 44.2(b) harm analysis will disregard any error "that does not affect substantial rights." Tex. R. App. P. 44.2(b). If the error has no influence or only a slight effect on the verdict, then it is harmless. *Nguyen v. State*, 693 S.W.3d 732, 740 (Tex. App.—Houston [14th Dist.] 2024, no pet.) (citing *Johnson*, 967 S.W.2d at 417). To determine the effect on the verdict, we consider (1) the character of the alleged error and its connection with other evidence, (2) the nature of the evidence supporting the verdict, (3) the existence and weight of additional evidence supporting the verdict, and

(4) whether the State emphasized the error. *Macedo v. State*, 629 S.W.3d 237, 240 (Tex. Crim. App. 2021) (citing *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018)).

Assuming without deciding that the objected-to response constitutes hearsay and was admitted erroneously, we turn to the nonconstitutional harm analysis. Here, in light of all the evidence before the trial court, we hold that the objected-to statement had no more than a slight effect on the verdict and was harmless. *See Nguyen*, 693 S.W.3d at 740.

Brantley testified that Moore came to her apartment that night because she was "not safe where she was" and "did not want to go back to where she lived."[5] When Moore was at Brantley's apartment the day of the offense, she also received text messages from Franklin stating that he hated her and that he would "kill [her] and everybody [she] try [sic] and be with." After sending the text messages, Franklin showed up uninvited to Brantley's apartment at 5:30 a.m., knocked aggressively on the door for more than 30 minutes, and broke into the apartment by kicking the door open.

Although the objected-to statement referenced Brantley's knowledge[6] about Franklin's previous domestic violence, it contained no details of the alleged prior acts.

---

[5]The record showed that Moore was living with Franklin at the time of the offense.

[6]The question and Brantley's response did not make it clear whether she was answering based on her own personal observations or if she was relying on the statements of others.

The text messages from Franklin that communicated his intent to harm Moore—and his subsequent actions to get to her—were illustrative of domestic violence in the hours before the offense, notwithstanding any prior occurrences. This render's Brantley's short testimony about alleged prior acts harmless. *See Bittick v. State*, 680 S.W.3d 405, 422 (Tex. App.—Fort Worth 2023) (holding that, absent a running objection or applicable exception, a party must object each time objectional evidence is offered and failure to do so renders the admission harmless), *aff'd*, 707 S.W.3d 366 (Tex. Crim. App. 2024); *Arevalo v. State*, 675 S.W.3d 833, 846 (Tex. App.—Eastland 2023, no pet.) (holding the same for evidence that is similar to the objected-to evidence). Therefore, considering the record, there was ample evidence (that was unrelated to Brantley's short statement) of Franklin's violent actions toward his girlfriend during the offense for the trial court to consider when determining his punishment. Moreover, the State did not mention the prior alleged family or domestic violence incidents during closing argument, *see Macedo*, 629 S.W.3d at 240, and the record showed no reliance by the trial court on Brantley's challenged statement.

The trial court heard unobjected-to testimony about some of Franklin's other alleged criminal activity spanning nine years, including (1) a burglary of a habitation offense, during which he broke into a home while carrying a firearm and ordered the occupants of the home to lie on the floor and give him their money and valuables; (2) a term of probation for a felony offense in Alabama; (3) an arrest for a felony offense in Mississippi; and (4) an arrest for a felony offense in Florida. And when the sentence

was pronounced, the trial court specifically pointed to the violence Franklin showed when he broke into Brantley's apartment and the number of chances Franklin had received—no mention was made of the alleged prior family or domestic violence activities. Further, as we have noted above, Franklin's sentence of 10 years' imprisonment was half of the permissible term of imprisonment under the statute. Thus, nothing in the record supports a conclusion that any error in admitting the objected-to statements affected Franklin's substantial rights or substantially influenced the verdict. We overrule Franklin's first issue.

## Conclusion

Having overruled both of Franklin's issues, we affirm the judgment of the trial court.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 21, 2025